FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -5  AM 11: 36

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOLLY BUSH | CIVIL ACTION |
| VERSUS | NO. 03-2836 |
| RODNEY "JACK" STRAIN, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ST. TAMMANY PARISH, ET AL | SECTION "I" (3) |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by the defendants, Sheriff Rodney Jack Strain, Jr., Detective Dale Galloway and Deputy Ronald Plaisance. For the following reasons, the defendant's motion is GRANTED.

### BACKGROUND

On October 9, 2003, plaintiff, Holly Bush ("Bush"), brought the instant civil rights claim pursuant to Title 42 U.S.C. § 1983 seeking damages for an alleged beating she received at the hands of St. Tammany Parish Detective Dale Galloway after she was placed in restraints. Plaintiff specifically alleges, to wit: "While the plaintiff was handcuffed with her wrists behind her back, the defendant, Galloway, grabbed the plaintiff behind the neck and slammed her face into the back of a parked car, causing permanent injury to her teeth, mouth, face, head, neck and jaw." *See* Plaintiff's

1



Complaint at ¶ 8. The plaintiff further alleges that Deputy Plaisance observed the use of excessive force but failed to intervene and subsequently conspired with Galloway to cover up the use of excessive force by failing to report it and by misrepresenting that the force deployed was necessary to effect her arrest and place her in restraints. *See* id. at ¶¶ 8-9. Plaintiffs' claims of constitutional magnitude include false arrest, excessive force and conspiracy.

Defendants' version of the events varies in significant particulars. Defendants contend that, on the date in question, Detective Galloway arrived first on the scene responding to a report that two females were causing a disturbance in the parking lot of the Blue Harbor Car Wash in Mandeville, Louisiana. After arriving on the scene, Detective Galloway proceeded to interview Bush and then Lauren Beyl ("Beyl"). Because Bush had become enraged and hostile as Beyl spoke, Detective Galloway instructed the plaintiff to leave the area so that he could complete the Beyl interview.[1]

After initially complying with Detective Galloway's instruction to get away from Beyl, plaintiff returned to the area with a cup of ice water, which she threw at Beyl. At that point, Detective Galloway announced that the plaintiff was under arrest for simple battery and proceeded to place Bush in handcuffs.

At trial on the criminal misdemeanor charges of simple battery and resisting an officer, Detective Galloway testified that, on the night in question (October 10, 2003), he cuffed Bush's left hand without complications, but as he was attempting to secure her right wrist Bush broke free, made a fist with her right hand and was attempting "to get at Ms. Beyl" to strike her again.[2] Detective

---

[1] *See* Transcript of the Misdemeanor Trial before the Honorable Raymond S. Childress in the matter of *State of Louisiana vs. Holly Bush,* Docket No. 356123 "A", dated October 13, 2004, testimony of Detective Galloway at p. 5 [Defendants' Exhibit "3"].

[2] *See id.*

2

Galloway further testified as follows, to wit:

> So, she had already broken free from my grasp and she made a fist formation and Ms. Bush is attempting to further strike and get closer to Ms. Beyl. I knew that she still had the hand-cuff on her left wrist which could be used as a dangerous weapon if she were to break free. So, I made sure that I held on tight to her left wrist and I wanted to create distance between Ms. Bush and Ms. Beyl, because I didn't want Ms. Bush to strike Ms. Beyl anymore.
> So, there was a struggle and little spinning and I was, like I said, trying to create distance between the two. While I was creating distance there just happened to be a car in the way that was about waist level and we, I guess, r[a]n into [it].
> So, once we r[a]n into the car, about that time Deputy Plaisance arrived to assist me and, at that time, we were able to maintain a grasp of her right wrist and get her secured without further complication.[3]

In summary, Detective Galloway testified that, prior to placing the hand-cuff on her left wrist, Bush was advised that she was under arrest and that, from the point at which he placed the left cuff to the time of Deputy Plaisance's arrival, Bush was uncooperative, uncontrollable and could not be contained.[4] When asked whether he realized that Bush's teeth had been knocked out, Detective Galloway testified that he did not become aware of that fact until after the incident. At the criminal trial, Detective Galloway specifically denied Bush's allegation that he "grabbed her by the head and smashed her head into the windshield"[5] and noted that both he and Bush ran into the parked car during the struggle *before Deputy Plaisance arrived* on scene and assisted in cuffing the plaintiff.

The Honorable Raymond S. Childress issued following ruling pursuant to the misdemeanor trial proceedings, to wit:

---

[3] *See* Transcript of the Misdemeanor Trial before the Honorable Raymond S. Childress in the matter of *State of Louisiana vs. Holly Bush,* Docket No. 356123 "A", dated October 13, 2004, testimony of Detective Galloway at pp. 6-7 [Defendants' Exhibit "3"].

[4] *See id.* at p. 7, 10, 12.

[5] *See id.* at p. 15.

> The Court at this time finds the defendant [Holly Bush] guilty of resisting arrest. The Court believes the officer's testimony regarding the fact that he advised the defendant that she was under arrest and that as he was attempting to cuff her she struggled to get free from him to strike this other person [Ms. Beyl]. And the witness who was called by the defense corroborates the officer's testimony.
> So I find the defendant guilty of resisting. I sentence her to pay a fine of $100.00 plus costs, default of which will be fifteen (15) days in the parish jail.[6]

The defendants aver, as Detective Galloway testified at the time of the criminal proceeding, that it was the plaintiff's own forceful actions attempting to propel herself in the direction of Beyl that caused Bush to strike her head against the rear of a parked vehicle. It is not disputed that, after she was restrained, plaintiff was placed in Detective Galloway's patrol car, transported to St. Tammany Parish Jail and charged with simple battery and resisting arrest.

Plaintiff has submitted the affidavits of Amy Huber and Lindsay Burga, who both attest, contrary to Detective Galloway's rendition of the events, that Holly Bush's hands were cuffed behind her back when she was forcibly slammed into the back of the parked car. Nevertheless, the misdemeanor trial testimony of Bush's friend, Lindsay Burga, unquestionably supports Detective Galloway's version of the events and the presiding judge specifically so held. Both Burga and Detective Galloway testified at Bush's criminal misdemeanor proceeding that Bush did not have both hands cuffed, became enraged and was combative when Detective Galloway grabbed her to prevent a battery upon Beyl.

---

[6] *Id.* at p. 22.

4

## STANDARD OF REVIEW

When ruling on a motion to dismiss, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the pleading party.[7] The complaint should only be dismissed if it appears beyond doubt that the pleading party can prove no set of facts in support of the claims raised that would entitle her to relief.[8]  The question is whether, in the light most favorable to the plaintiff and with every doubt resolved in her behalf, the complaint states any valid claim for relief.[9]  Although there are exceptions to the mandate, generally a court should consider only the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  When a court considers matters outside of the pleadings, Rule12(b) requires that the motion be treated as if it were one for summary judgment and that the matter be disposed of as provided in Rule 56.

The principal purpose of Fed. R. Civ. P. 56 is to "isolate and dispose" of factually unsupported claims.[10]  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact...."[11]  There is no "genuine issue" when the record taken as a whole could not

---

[7]See *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom, Cloud v. United States*, 536 U.S. 960 (2002); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[8]See *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994).

[9]See *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11]Fed. R. Civ. P. 56(c).

lead a rational trier of fact to find for the nonmovant.[12]  Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." On a motion for summary judgment, factual controversies are to be resolved in favor of the non-moving party.[13]

## LAW AND ANALYSIS

Now that the plaintiff has been convicted on the charge of resisting an officer,[14] defendants reurge their motion to dismiss on the basis that the plaintiff's claims for damages under § 1983 are *Heck*-barred.

The *Heck* court stated its holding as follows, to wit:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of writ of habeas corpus, 28 U.S.C. § 2254.... Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[15]

---

[12]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[13]*See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[14]*See* True Extract of Court Minutes dated Wednesday, October 13, 2004 in the Criminal Misdemeanor Proceedings conducted in the case of *State of Louisiana vs. Holly Bush*, Docket No. 356130 on the docket of the Twenty Second Judicial District Court of the Parish of St. Tammany [Defendants' Exhibit 1].

[15]*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote omitted).

The Supreme Court imposed this requirement on § 1983 plaintiffs in order to avoid their collateral attacks on convictions that are still outstanding, finding that the principle that civil tort actions are not appropriate vehicles for challenging the validity of criminal judgments applies to § 1983 damage actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.[16]

In *Hudson v. Hughes*, 98 F.3d 234 (5th Cir. 1996), the Fifth Circuit held that *Heck* barred the plaintiff's § 1983 claims alleging excessive force. The Fifth Circuit reasoned that the plaintiff's excessive force claim was barred because it necessarily implied the invalidity of his conviction under Louisiana law.[17] The plaintiff in *Hudson* was convicted of battery on an officer.

In the case at bar, the defendants aver that the plaintiff's head injuries occurred while Galloway attempted to subdue Bush and effect her arrest. Defendants further claim that the plaintiff's injuries were the direct result of plaintiff's own forceful or combative actions in her effort to resist Detective Galloway and to simultaneously initiate physical confrontation with another individual at the scene, Lauren Beyl. For her part, plaintiff claims that the alleged brutality occurred after she was completely restrained by Deputy Galloway, with both hands cuffed behind her back. As explained in more detail below, upon considering the *particular circumstances of this case*, accepting the plaintiff's allegations as true would necessarily cast doubt on her criminal conviction.

In *Hudson, supra,* the Fifth Circuit observed that whether the police applied reasonable force in an arrest depends on the degree of resistance, which in turn will place at issue whether the

---

[16]*Id.*

[17]*Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)

7

resistance was justified, which, if it were, necessarily undermines that conviction.[18]

A § 1983 claim that a police officer used excessive force <u>after</u> an arrest does not necessarily imply the invalidity of a conviction for resisting arrest or for battery, when the alleged beating occurred after the battery was over and after the plaintiff was placed in restraints.[19] Additionally, the plaintiff is also alleging an after-the-fact conspiracy to cover up what allegedly occurred in this case, *i.e.*, excessive force being deployed after the plaintiff was placed in restraints.

Bush's conviction on the charge of resisting an officer is predicated on the criminal court's factual finding that Bush was not restrained and did not have both hands cuffed behind her back at the time her head careened into a nearby parked car. Plaintiff's conviction is predicated upon both Detective Galloway's and Lindsay Burga's testimony that Bush was enraged and struggling uncontrollably to get back at Beyl *before Deputy Plaisance arrived* to assist Detective Galloway.

In the criminal misdemeanor proceeding, the Honorable Raymond Childress specifically credited Detective Galloway's testimony that, while he "was attempting to cuff" Bush, "she struggled to get free from him to strike this other person [Beyl]."[20] The judge further specifically found that the testimony of defense witness, Lindsay Burga, "corroborates the officer's testimony."[21]

The entire thrust of the plaintiff's case is that she had both hands cuffed behind her back and was non-combative when Detective Galloway allegedly grabbed her head and slammed it into the

---

[18]*Id.*

[19]*See Howard v. Del Castillo,* 2001 WL 1090797 * 3 (E. D. La. September 17, 2001) (Clement, J.) (*citing Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir. 1996) and *Swangin v. California State Police,* 168 F.3d 501 (9th Cir. 1999)).

[20]Misdemeanor Trial Transcript at p. 22 [Defendants' Exhibit "3"].

[21]*Id.*

8

windshield of a parked car. Plaintiff specifically alleges in her complaint that:

> While the plaintiff was handcuffed with her wrists behind her back, the defendant, GALLOWAY, grabbed the plaintiff behind the neck and slammed her face into the back of a parked car, causing permanent injury to her teeth.... At no time did the plaintiff resist arrest. The defendant, GALLOWAY, utilized excessive force when he restrained the plaintiff. The defendant, Ronald Plaisance, observed this use of excessive force by GALLOWAY but failed to intervene to stop GALLOWAY and also failed to report to his supervisors and/or other law enforcement officers the illegal and unconstitutional use of excessive force.... The act of falsely arresting the plaintiff for resisting arrest was an overt act taken by both GALLOWAY and PLAISANCE in furtherance of the conspiracy to cover up the use of excessive force....
> 
> The conspiracy specifically included the intentional misrepresentation by both defendants that the force used to restrain the plaintiff was necessary and that PLAISANCE participated in the handcuffing of the plaintiff because she resisted. The defendant, PLAISANCE, did not, in fact, participate in restraining the plaintiff or in handcuffing her. He was a passive observer of the arrest and brutality of HOLLY BUSH by GALLOWAY.[22]

The plaintiff's allegations set forth above, together with the proffered affidavit testimony of Amy Huber and Lindsay Burga, squarely contradict the state court misdeameanor trial testimony of Detective Galloway and Burga, as well as the state court judge's findings that Bush was at all pertinent times struggling to get at Beyl, combative and *resisting an officer*. The Huber and Burga affidavits are essentially identical and state that Detective Galloway cuffed *both* of Bush's wrists at the outset and thereafter she did not resist or remain combative.[23] As previously mentioned, Burga's trial testimony supports defendants' version of the events and Judge Childress specifically so held. Burga testified at the criminal misdemeanor trial that: (1) Detective Galloway had only one of Bush's arms behind her back when she lunged to hit Beyl; and (2) when Detective Galloway attempted to

---

[22]*See* Plaintiff's Complaint at paras. 8-9 [Rec. Doc. No. 1].

[23]*See* Affidavit of Amy Huber [Plaintiff's Exhibit 1]; Affidavit of Lindsay Burga [Plaintiff's Exhibit 2].

restrain Bush's free, fisted hand, her face forcefully hit the back of a parked car.[24]

Insofar as Burga's affidavit is concerned, the Court notes that the Fifth Circuit is clear that a nonmoving party may not manufacture a dispute of fact to defeat a motion for summary judgment by submitting an affidavit that contradicts, without explanation, that individual's own prior sworn testimony.[25] This Court recognizes the maxim that "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."[26] However, careful review of the affidavit and the misdemeanor trial testimony of Burga reveals that her attestations contradict her prior sworn trial testimony in significant aspects and thus the Court must disregard Burga's affidavit.[27]

This Court finds that *Heck* bars all of the plaintiff's claims. In *Heck*, the Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that conviction has been reversed, expunged, declared invalid or called into question by federal habeas corpus.[28] *Heck* bars claims for "unconstitutional conviction or imprisonment" as well as claims "for other harm caused by actions whose unlawfulness

---

[24] *See* Trial Testimony of Lindsay Burga at pp. 19-20 [Defendants' Exhibit 4].

[25] *Doe ex rel. v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n. 23 (5th Cir. 1992).

[26] *S.W.S.*, 72 F.3d at 496 (*citing Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir.1988))

[27] *See Hebert v. Pride International, et al*, 2004 WL 414959 * 2 (E. D. La. Mar. 5, 2004) (Africk, J.) (finding plaintiff's affidavit contradicted his prior deposition testimony and disregarding the contradictory attestations).

[28] 512 U.S. at 486-87.

would render a conviction or sentence invalid."[29]  Thus, unless the conviction has been overturned, a plaintiff cannot bring a § 1983 claim if prevailing on that claim would imply that his or her conviction was invalid.

How *Heck* applies to excessive force claims is not always clear.  By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction.[30]  Other circuit courts have emphasized the conceptual difference between an excessive force claim and a challenge to a conviction.  Both the Ninth and Third Circuits have indicated that an excessive force claim would not necessarily challenge a plaintiff's conviction for assault during a stop.[31]  Noting this distinction, the Fifth Circuit has recognized that certain convictions will prevent a plaintiff from bringing an excessive force claim. In *Arnold v. Town of Slaughter*,[32] the Fifth Circuit observed:

> [W]e have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.2000); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir.1999). We reached this holding after determining that Texas law permits an officer to use any force--even deadly force--to protect against an aggravated assault. *Sappington*, 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault. *Id.* And thus a judgment would call into question the plaintiff's conviction. *Id.* Likewise, we have also held that a Louisiana conviction for battery of an officer--a crime for which justification is an affirmative defense--prevents the plaintiff from suing for excessive force in connection with the incident. *Hudson*, 98 F.3d at 873. If the plaintiff proved his excessive force claim, he would essentially be proving that his battery was

---

[29] *Id.* at 486.

[30] *See Hudson v. Hughes,* 98 F.3d 868, 873 (5th Cir.1996).

[31] *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3rd Cir. 1997); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

[32] *Arnold v. Town of Slaughter,* 100 Fed.Appx. 321 (5th Cir., June 14, 2004)(unpublished/*per curiam*), *cert. denied*, 125 S. Ct. 429 (2004).

11

justified, which would undermine his conviction. *Id.* As these cases show, the *Heck* determination depends on the nature of the offense and of the claim. *Cf. Hudson*, 98 F.3d at 873 (noting that, because of the nature of the plaintiff's offense, the conceptual difference between an excessive force claim and a challenge to a conviction "may be applicable in many section 1983 claims of excessive force, [but] it does not help [plaintiff] today").[33]

In this case, Bush was convicted of resisting an officer, in violation of La.Rev.Stat. Ann. § 14:108. This statute provides:

> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, *324 or serving process is acting in his official capacity.
> B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
> (a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
> (b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
> (c) Refusal by the arrested party to give his name and make his identity known to the arresting officer or providing false information regarding the identity of the arrested party to the arresting officer.
> (d) Congregation with others on a public street and refusal to move on when ordered by the officer.[34]

While the statute provides many ways of committing the offense, the judge in the criminal trial found that Bush resisted an officer by resisting arrest, being hostile, threatening and attempting to initiate a physical confrontation with another at the scene of the incident. By doing so, she interfered with the officer's performance of duty with respect to effecting her arrest and investigating the reported incident. The trial transcript clearly reveals that Bush did not cooperate with Detective Galloway's instructions while he attempted to place her under arrest. Instead, she compounded the

---

[33] *Id.*

[34] La.Rev.Stat. Ann. § 14:108.

problem by attempting to initiate a physical confrontation with Beyl. Plaintiff's combative behavior persisted even after she hit her head on the parked car up until the time that Deputy Plaisance arrived on the scene to assist in effecting her arrest.[35] On the basis of the foregoing facts, the state court judge found Bush guilty of resisting an officer.[36]

Despite the state court judge's findings, Bush now contends that she did nothing to provoke Detective Galloway's actions. Plaintiff's complaint does not state that she was hostile, combative or threatened any physical confrontation and denies that she resisted an officer. In her deposition, plaintiff denied making any threatening gestures or raising her fist.[37] Moreover, during her deposition in this case, Bush testified that only after she was completely overpowered by Detective Galloway and had both of her hands cuffed behind her back, did he throw her against a parked car.[38] Plaintiff further testified that, prior to her deposition in this case, she had never seen Deputy Plaisance and she had no recollection of him being either at the scene of the Blue Harbor Car Wash or assisting Detective Galloway in effecting her arrest.[39] Essentially, it is the plaintiff's testimony that she did not resist and, to the contrary, she was completely overpowered by Detective Galloway.

Bush's complaint and her summary judgment evidence contradicts the findings of the state court judge, who found the defendant guilty of resisting an officer. For example, the affidavits of

---

[35]*See* Transcript of the October 13, 2004 Criminal Misdeameanor Proceedings, at p. 7 [Defendants' Exhibit 3].

[36]*See* Transcript of the October 13, 2004 Criminal Misdeameanor Proceedings, at p. 22 [Defendants' Exhibit 3].

[37]*See* Plaintiff's Deposition taken May 18, 2004 at p. 52 [Defendants' Exhibit 4].

[38]*See id.* at pp. 54-55.

[39]*See id.* at p. 59.

witnesses, Amy Huber and Lindsay Burga, mimic plaintiff's § 1983 complaint and state that Detective Galloway handcuffed both of Holly Bush's wrists behind her back and then forcibly slammed her body and face into a parked car with one hand holding her handcuffed wrists and his other hand behind her neck or head. These witnesses further attest that "Bush did not resist or remain combative" and that "there were no other police officers present who assisted Detective Galloway in handcuffing Holly Bush or in placing her in the vehicle."[40]

Essentially, Bush claims that she did nothing wrong, did not resist and was viciously attacked for no good reason. Bush's claims are distinguishable from excessive force claims that survive *Heck*'s bar. Her case differs from *Nelson*, where the Third Circuit permitted the plaintiff to show that the defendant used excessive force, but prohibited him from contradicting the criminal jury's finding that some substantial force was justified.[41] Plaintiff's case is also distinguishable from *Smithart*, wherein the plaintiff, who was convicted of driving his truck at officers, contended that the defendant officers arrested him, handcuffed him, and then beat him, and thus "used force ... out of proportion to the threat which [plaintiff] posed to the defendants."[42] Smithart's claim did not challenge the finding that the plaintiff drove his truck at the defendants. In both *Smithart* and *Nelson*, the plaintiff could proceed with a claim that did not contradict the criminal jury's fact finding.

---

[40]*See* Affidavit of Amy Huber [Plaintiff's Exhibit 1]; Affidavit of Lindsay Burga [Plaintiff's Exhibit 2].

[41]*Nelson*, 109 F.3d at 146.

[42]*Smithart*, 79 F.3d at 952.

14

In contrast, Bush's suit squarely challenges the state court judge's factual determinations upon which her conviction of resisting an officer is based. If Bush prevails, she will have established that her criminal conviction lacks any basis. Therefore, this lawsuit challenges the validity of Bush's conviction and is barred by *Heck*. "[T]he core of *Heck* is a proscription against allowing a civil tort suit to cast doubt on a criminal conviction."[43] In applying *Heck*, the district court must look to the facts of the specific case at hand to determine whether a victory in the 1983 suit would impact the criminal conviction and/or result in an inconsistent judgment.[44] Looking to the facts of this specific case discussed in more detail above, it is clear that a victory for Bush on her § 1983 claim would clearly impact her criminal conviction.

The Court further notes that, to obtain Bush's conviction for resisting an officer, the prosecution had to prove that the officer was making a lawful arrest.[45] The state trial judge made specific findings crediting Deputy Galloway's testimony that Bush resisted, was combative and struggled to strike at Beyl during the entire time that the deputy was attempting to cuff her. Moreover, the state trial judge made the specific finding that, in this regard, Burga's trial testimony corroborated the officer's testimony. By claiming false arrest, Bush argues that, contrary to one finding underlying her conviction, her arrest was unlawful. Therefore, this claim also violates *Heck*. Additionally, it is clear from a cursory reading of the plaintiff's allegations that a judgment in favor of the plaintiff on the claim of a coverup conspiracy after-the-fact necessarily challenges both of the

---

[43]*Faulkner v. McCormick*, 2002 WL 31465892 * 2 (E. D. La., November 1, 2002) (*citing Heck*, 512 U.S. at 487).

[44]*Id.*

[45] La.Rev.Stat. Ann. § 14:108.

aforesaid findings, *i.e.*, that her arrest was lawful and that she was guilty of resisting an officer under the circumstances presented.[46] It is undisputed that Bush's state court criminal conviction has not been overturned or otherwise set aside.

Accordingly,

**IT IS ORDERED** that the defendant's motion seeking dismissal of the plaintiff's case is GRANTED on the basis that the plaintiff's claims are presently *Heck*-barred.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this action CLOSED for statistical purposes. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party should circumstances change, so that it may proceed to final disposition.

New Orleans, Louisiana, this 5th day of August, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[46]*See* Note 22, *supra*, and accompanying text.